El Juez Presidente Señor Hernández Denton
emitió la opinión del Tribunal.
El presente caso requiere que nos expresemos por pri-mera vez sobre el procedimiento de aprobación de regla-mentos con vigencia inmediata dispuesto en la Sec. 2.13 de la Ley Núm. 170 de 12 de agosto de 1988, según enmen-dada, conocida como la Ley de Procedimiento Administra-tivo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), 3 L.P.R.A. sec. 2133. En específico, debemos de- *75 terminar si el Departamento de Salud y el Gobernador cumplieron con los requisitos del referido estatuto al apro-bar el Reglamento Núm. 117-A de 2008. Por entender que ambos incumplieron con los requisitos allí dispuestos al no fundamentar detalladamente las circunstancias que exi-gían utilizar el procedimiento de aprobación de reglamen-tos de emergencia, revocamos la sentencia del Tribunal de Apelaciones que decidió lo contrario.
I
En noviembre de 2008, el Secretario de Salud aprobó el Reglamento Núm. 117-A (Reglamento 117-A), Reglamento Núm. 7634 de 17 de diciembre de 2008 (Reglamento 7634), para enmendar el Reglamento Núm. 117 del Departa-mento de Salud que regula el licénciamiento, operación y mantenimiento de los hospitales en Puerto Rico (Reglamento Núm. 6921 del Departamento de Salud de 21 de diciembre de 2004). El Reglamento 117-A busca delimitar el procedimiento para que los pacientes o sus responsables presten su consentimiento informado a toda intervención médica luego de recibir la correspondiente orientación. Dicho Reglamento prohíbe que se incluyan cláusulas legales de selección de foro dentro de los formularios de consenti-miento informado, restricciones de cualquier tipo al dere-cho del paciente terminal a recibir consultoría espiritual y, además, ordena el establecimiento de comités de asuntos ético-hospitalarios.
Posteriormente, el Gobernador firmó una Certificación en la que indicó que, en conformidad con lo dispuesto en la Sec. 2.13 de la L.P.A.U., supra, el interés público requería la inmediata puesta en vigor del Reglamento 117-A, según el procedimiento de emergencia. El 17 de diciembre de 2008, el Secretario de Salud presentó el Reglamento 117-A y la Certificación del Gobernador ante el Departamento de Estado, donde se le asignó el número 7634.
*76 El 4 de febrero de 2009, el Centro Médico del Turabo, Inc. h/n/c Grupo HIMA San Pablo (HIMA), presentó una acción de nulidad al amparo de la See. 2.7 de la L.P.A.U., 3 L.P.R.A. see. 2127, e impugnó el procedimiento de aproba-ción del Reglamento 7634. Alegó, en síntesis, que el regla-mento es nulo ab initio porque el Departamento de Estado no hizo el aviso público dentro de los veinticinco días a partir de su presentación, según dispone la Sec. 2.8(d) de la L.P.A.U., 3 L.P.R.A. 2128(d). Sostuvo que, al no habérsele notificado el reglamento que desde entonces venía obligado a seguir, el término para impugnarlo estaba suspendido. Adujo, además, que no se podía emplear el procedimiento de aprobación de reglamentos de vigencia inmediata al amparo de la Sec. 2.13 de la L.P.A.U., supra, porque la Certificación que emitió el Gobernador no consignaba sufi-cientes circunstancias que justificaran su uso.
El Departamento de Salud compareció por conducto de la Oficina de la Procuradora General y alegó, en esencia, que el requisito de publicación dispuesto en la See. 2.8 de la L.P.A.U., supra, 3 L.P.R.A. sec. 2128, contrario a lo que sostiene HIMA, se refiere a la publicación que se hace luego de completar el trámite ordinario de aprobación de reglamentos, según lo dispone el Art. 2.13 de la L.P.A.U., supra. Sostuvo que como consecuencia del cambio de go-bierno y del receso navideño, aún estaba a tiempo de co-menzar a cumplir con los requisitos de aprobación de re-glamentos presentados al amparo del procedimiento expedito de vigencia inmediata.
El Tribunal de Apelaciones resolvió que se cumplieron los requisitos de aprobación de reglamentos sin previa pu-blicación, por lo que no le asistía la razón a HIMA en cuanto a que el Reglamento 7634 es nulo ab initio o que el término para impugnarlo esté suspendido. Determinó, ade-más, que no contaba con los elementos para evaluar si la situación justificaba el uso del procedimiento de vigencia sin publicación, pues el Departamento de Salud todavía no
*77 había realizado el proceso de publicación y comentarios exigido por las Sees. 2.1-2.3 de la L.P.A.U., 3 L.P.R.A. sees. 2121-2123, y que, debido a que HIMA estaba obligado a cumplir con el Reglamento sin poder, hasta ese momento, participar del procedimiento de aprobación, suspendería su vigencia hasta tanto se completara el procedimiento or-dinario de aprobación.
Inconforme, HIMA acudió ante nos mediante el recurso de certiorari CC-2009-463 y alegó que el Tribunal de Ape-laciones erró al no evaluar la procedencia en este caso del uso del procedimiento de vigencia inmediata dispuesto en la Sec. 2.13 de la L.P.A.U., supra, al resolver que no es necesario publicar el reglamento hasta tanto se complete el procedimiento preterido y al suspender la vigencia del re-glamento en vez de decretar su nulidad absoluta. Por su parte, el Departamento de Salud acudió ante nos mediante el recurso de certiorari CC-2009-468 y alega, como único señalamiento de error, que erró el foro apelativo interme-dio al decretar la suspensión del reglamento en cuestión, a pesar de que un reglamento aprobado según la Sec. 2.13 de L.P.A.U., supra, tiene vigencia inmediata, una vez se pre-senta ante el Departamento de Estado.(1)
Examinados ambos recursos, ordenamos su consolida-ción y acordamos expedir. Con el beneficio de la compare-cencia de ambas partes, procedemos a resolver.
*78 II
Como es sabido, la L.P.A.U. requiere que las agencias administrativas observen ciertos requisitos mínimos al aprobar las llamadas “reglas legislativas”. Centro Unido Detallistas v. Com. Serv. Púb., 174 D.P.R. 174 (2008). Esto es, al aprobar ese conjunto de normas de contenido sustantivo que complementan la ley, crean derechos, imponen obligaciones y establecen un patrón de conducta. Id. En específico, la L.P.A.U. exige que se cumpla con los requisitos de notificación, participación ciudadana, presentación y publicación. Mun. de San Juan v. J.C.A., 152 D.P.R. 673, 690-691 (2000).
En primer lugar, la L.P.A.U. exige que cuando una agencia se proponga adoptar, enmendar o derogar una regla o un reglamento, debe cumplir con un requisito de notificación mediante la publicación de un aviso en el que se detalle el propósito de la reglamentación propuesta, la fuente legal que la autoriza y la forma en la que se podrán someter comentarios o solicitar la celebración de una vista. 3 L.P.R.A. sees. 2121-2123.
Luego de dicha etapa inicial, comienza un proceso de participación ciudadana dentro del cual la agencia con-fiere, al menos, treinta días para que las personas sometan sus comentarios y propuestas por escrito o soliciten la celebración de vistas. 3 L.P.R.A. sec. 2122. La agencia podrá celebrar vistas de forma discrecional, a menos que por ley se le requiera. 3 L.P.R.A. sec. 2123. Es imperativo que la agencia también mantenga un expediente disponible al público con todo lo relativo al procedimiento de adopción, enmienda o derogación de la regla o reglamento en cuestión. 3 L.P.R.A. sec. 2126. Esta etapa es esencial, pues la parti-cipación ciudadana trae ante la consideración de la agencia perspectivas distintas sobre el alcance y la aplicación de las reglas que pretende aprobar. D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Adminis- *79 trativo Uniforme, 2da ed., Bogotá, Ed. Forum, 2001, págs. 114-115.
La Sec. 2.8(a) de la L.P.A.U. dispone que, luego de que culmine el proceso de participación ciudadana, toda agencia que haya aprobado un reglamento debe presentarlo ante el Departamento de Estado. 3 L.P.R.A. sec. 2128(a). Asimismo, establece que, como regla general, los reglamentos entrarán en vigor a los treinta días de su presentación ante dicho departamento. No obstante, acto seguido, detalla tres excepciones: (1) que por ley se disponga otra fecha de vigencia; (2) que mediante el propio reglamento se disponga otra fecha, siempre que la ley lo auto-rice, y (3) que se trate de un reglamento de emergencia, o sea, de vigencia sin previa publicación, según lo dispuesto en la Sec. 2.13 del referido estatuto, 3 L.P.R.A. sec. 2133. íd.
Por último, es preciso que se cumpla con un procedimiento de publicación del reglamento. A estos efectos, el inciso (d) de la See. 2.8 de la L.P.A.U. dispone que “[e]l Secretario [de Estado] publicará en dos (2) periódicos de circulación general una síntesis del contenido de cada reglamento presentado, con expresión de su número, fecha de vigencia y agencia que lo aprobó. Esta publicación se llevará a cabo dentro de los veinticinco (25) días siguientes a la fecha de su radicación”. 3 L.P.R.A. sec. 2128(d). El fin de esta norma es cumplir con el requisito de notificación, elemento indispensable para validar la reglamentación y darle virtualidad al principio básico, consignado en el Art. 2 del Código Civil de Puerto Rico, de que la ignorancia de la ley no es excusa para su incumplimiento. Fernández Quiñones, op. cit., págs. 116-117.
Según se deduce de lo anterior, el propósito de los procedimientos de notificación, participación ciudadana, presentación y publicación es garantizar que a los ciudadanos se les notificará y tendrán una oportunidad de que se *80 consideren sus puntos de vista antes de adoptar una norma que impacte sus derechos y les imponga obligaciones.
No obstante, la L.P.A.U. contiene un mecanismo me-diante el cual una agencia podrá, en casos excepcionales, aprobar un reglamento de vigencia inmediata sin tener que cumplir con la totalidad de los requisitos antes descritos. En concreto, la Sec. 2.13 de la L.P.A.U., supra, dispone que cuando el Gobernador certifique que los inte-reses públicos exigen que el reglamento entre en vigor in-mediatamente, pues existe una emergencia o cualquier otra circunstancia que lo justifique, el secretario de la agencia someterá la referida certificación y el reglamento en cuestión ante el Departamento de Estado.
La sección en cuestión exige, sin embargo, que la agen-cia cumpla posteriormente con los procedimientos de noti-ficación y participación ciudadana, y someta cualquier en-mienda o modificación al Departamento de Estado. En lo pertinente, establece que
[u]na vez así radicado el reglamento, o la enmienda al mismo, la agencia dará cumplimiento a lo dispuesto en las Secciones 2.1, 2.2 y 2.3 de esta ley, y, de determinar modificaciones o enmiendas al reglamento radicado al amparo de esta sección, radicará las mismas en la oficina del Secretario de Estado, y se le dará cumplimiento a lo dispuesto en la Sección 2.8 de esta ley. Ley 170 de 12 de agosto de 1988, según enmendada por la Ley Núm. 43 de 5 de agosto de 1989 (1989 Leyes de Puerto Rico 160, 162).
Por último, cabe señalar que la See. 2.7 de la L.P.A.U., supra, preceptúa una “acción de nulidad” o “acción de impugnación” para uniformar la revisión judicial de las acciones que tomaron las agencias al promulgar sus reglamentos. Centro Unido Detallistas v. Com. Serv. Púb., supra, pág. 183. Como una agencia no tiene discreción para apartarse del procedimiento establecido en la L.P.A.U., es preciso evaluar qué requisitos de dicha ley hay que cumplir ineludiblemente para así poder evaluar si se *81 produjo un incumplimiento sustancial de la ley. íd. De acuerdo con ello, la referida sección establece que las re-glas o los reglamentos que se aprueben en contravención a la propia L.P.A.U. serán nulos. 3 L.P.R.A. sec. 2127. A esos efectos, dispone que cualquier persona podrá impugnar de su faz una regla o reglamento inválido mediante un re-curso interpuesto en el Tribunal de Apelaciones dentro de los 30 días siguientes a la fecha de su vigencia. Id.
III
Desafortunadamente, la L.P.A.U. guarda silencio sobre lo que constituye una “emergencia” o una “circunstancia” particular que exija que se obvie el trámite ordinario de aprobación de reglamentos y se emplee la Sec. 2.13. Tampoco nos hemos expresado al respecto. No obstante, hemos interpretado el término emergencia en otros contextos, por lo que resulta conveniente reseñar dicha jurisprudencia.
En Meléndez Ortiz v. Valdejully, 120 D.P.R. 1 (1987), interpretamos el término emergencia dispuesto en el Art. 4 de la Ley Núm. 21 de 31 de mayo de 1985, conocida como la Ley Uniforme para la Revisión y Modificación de Tarifas. En dicho caso, dispusimos, entre otras cosas, que “el con-cepto ‘emergencia’ no necesariamente se limita a una cir-cunstancia imprevista, sino que comprende un suceso o combinación y acumulación de circunstancias que exigen inmediata actuación. ‘Emergencia’ es sinónimo de ‘urgen-cia’, ‘necesidad’, ‘prisa’ ”. (Enfasis suprimido.) Id., págs. 22—23. Allí también aplicamos los criterios esbozados en Potomac Elec. Power v. Public Service Comission of Dist. Of Col., 457 A.2d 776 (D.C. App. 1983), para determinar si una agencia que provee servicios básicos se encuentra ante una situación de emergencia, a saber, si existe
(1) una amenaza actual o claramente inminente de que la Agen-cia será incapaz de continuar llevando a cabo su gestión de *82 servicio público, y (2) una amenaza actual o claramente inmi-nente de que la Agencia será incapaz de obtener fondos necesa-rios para financiar la construcción de plantas nuevas o de reem-plazo necesarias. Meléndez Ortiz v. Valdejully, supra, pág. 23.
Posteriormente, en Hatton v. Mun. de Ponce, 134 D.P.R. 1001 (1994), nos expresamos sobre si procede que un mu-nicipio utilice el mecanismo de adquisición de bienes en situaciones de emergencia. Específicamente, interpretamos el concepto emergencia dispuesto en la Sec. 7.03 de la entonces vigente Ley Orgánica de los Municipios de Puerto Rico, 21 L.P.R.A. sec. 3203 (Sup. 1986). Según esa sección, que autorizaba al alcalde a utilizar un mecanismo especial de adquisición de bienes en casos de emergencia, se reque-ría “un suceso o combinación ocasional de circunstancias que exijan inmediata acción”. íd. Al aplicar la definición provista en la ley a los hechos específicos de aquel caso, resolvimos que no procedía emplear el mecanismo de ad-quisición de emergencia, ya que el tipo de equipo que se pretendió adquirir no se podía conseguir de forma inme-diata sino que se debía hacer a la medida. Por ello, estima-mos que si había que esperar varios meses en lo que se fabricaba el equipo, no se justificaba que se hubiese ob-viado el procedimiento ordinario de adquisición de bienes mediante subasta pública.
Años más tarde, en R & B Power v. E.L.A., 170 D.P.R. 606 (2007), otro caso sobre adquisición de bienes en situa-ciones de emergencia, interpretamos el concepto estado de emergencia, dispuesto en la Ley Núm. 92 de 31 de marzo de 2004, que enmendó la Ley Orgánica de la AAA. Mediante la Ley Núm. 92 se autorizó a la
... Junta [de Directores de la AAA] a eximir del requisito de “subasta pública y licitación para la adjudicación de contratos de construcción, compras u otros contratos cuando por situa-ción de emergencia se estime que es necesario y conveniente a los fines de proteger la vida o la salud ... o para evitar incum-plimientos ambientales que pudieran dar lugar a la imposición de multas ...”. (Enfasis suprimido.) R & B Power v. E.L.A., supra, pág. 612.
*83 Según dicha autorización, la Junta de Directores de la AAA utilizó un requerimiento de propuestas para adquirir vehículos para reemplazar parte de su flota y evitar multas federales por incumplimientos con leyes ambientales. Resolvimos que el uso de dicho método para adquirir los bienes fue legítimo y que, de impugnarse la adjudicación de la buena pro, los tribunales tendrían la facultad de re-visar la declaración del estado de emergencia en sí. Adver-timos, además, que se trataba de una facultad extraordinaria y que “[s]ólo la escrupulosa adhesión a lo que constituye una emergencia evitará el despilfarro de fondos públicos”. (Enfasis suprimido.) R & B Power v. E.L.A., supra, pág. 625, citando a Hatton v. Mun. de Ponce, supra. Expresamos también que la flexibilidad que da la sección allí en controversia “no puede convertirse en patente de corso” ni “puede convertirse en la norma y así servir de subterfugio para soslayar el mecanismo normal”. Id.
Unos meses después, en Acevedo Vilá v. C.E.E., 172 D.P.R. 971 (2007), analizamos el concepto situación ex-traordinaria, dispuesto en el Reglamento para el Control de Gastos de Difusión Pública del Gobierno para el Referéndum de 10 de julio de 2005 como excepción a la prohibición de difundir anuncios gubernamentales durante una veda electoral establecida en el Art. 8.001 de la Ley Electoral de Puerto Rico, Ley Núm. 4 de 20 de diciembre de 1977, según enmendada, 16 L.P.R.A. see. 3351. Dicho esta-tuto prohíbe la difusión de anuncios gubernamentales du-rante el periodo de veda electoral y, a modo de excepción, permite que se solicite una autorización previa a la Comi-sión Estatal de Elecciones en casos de interés público, ur-gencia o emergencia. Id. El reglamento en cuestión, por su parte, definía “urgencia o emergencia” como una
[s]ituación de carácter súbito o imprevisto, ocasionada por ac-tos del hombre o de la naturaleza, que requiere la inmediata divulgación de información por parte de una agencia, según el ámbito de sus deberes y funciones, a los fines de proteger la vida, la propiedad o los derechos de la ciudadanía. See. 1.4(16).
*84 No obstante, el referido reglamento permitía que se difundieran anuncios gubernamentales ante “situaciones ex-traordinarias” sin autorización previa, siempre y cuando se solicitara dentro de las cuarenta y ocho horas siguientes a la transmisión. Al analizar si la situación fiscal que atra-vesaba Puerto Rico en aquel momento justificó la difusión del mensaje del ex Gobernador sin solicitar autorización previa, expresamos que, si bien en el contexto administra-tivo el concepto emergencia no necesariamente se limita a una circunstancia imprevista, sino que comprende un su-ceso o combinación y acumulación de circunstancias que exigen inmediata actuación —Meléndez Ortiz v. Valdejully, supra— dicha situación no es suficiente para fundamentar la legalidad de acogerse al mecanismo de autorización posterior a la difusión del mensaje. Acevedo Vilá v. C.E.E., supra, pág. 992.
En cuanto al concepto situación extraordinaria que, de configurarse, permitía utilizar el mecanismo de autoriza-ción posterior expresamos que, además de tratarse de una emergencia, es una situación en la que “existe una inmi-nente lesión al interés público, de modo que una demora en la expresión gubernamental ofenda el sentido de la justi-cia; ocasione daños irreparables; perjudique los derechos constitucionales de la ciudadanía; derrote el orden de la ley e incida indefectiblemente sobre la sana convivencia social”. Meléndez Ortiz v. Valdejully, supra, pág. 24.
Por último, en San Gerónimo Caribe Project v. A.R.Pe., res. 174 D.P.R. 640 (2008), interpretamos la Sec. 3.17 de la L.P.A.U., 3 L.P.R.A. sec. 2167, sobre procedimientos adju-dicativos de acción inmediata. En lo pertinente, la sección dispone que “[u]na agencia podrá usar procedimientos ad-judicativos de emergencia en una situación en que exista un peligro inminente para la salud, seguridad y bienestar público o que requiera acción inmediata de la agencia”. 3 L.P.R.A. sec. 2167.
*85 Al evaluar si procedía la revocación sumaria de irnos permisos de construcción mediante el procedimiento de acción inmediata de la citada Sec. 3.17 de la L.P.A.U., expresamos que no se justificaba el uso del mecanismo sumario para revocar los permisos en controversia. Ello, pues una emergencia “ ‘comprende un suceso o combinación y acu-mulación de circunstancias que exigen inmediata actuación. ‘Emergencia’ es sinónimo de ‘urgencia’, ‘necesi-dad’, ‘prisa’ ”. San Gerónimo Caribe Project v. A.R.Pe., supra, pág. 665, citando a Meléndez Ortiz v. Valdejully, supra, págs. 22-23. Expresamos, además, que
[ya] que el procedimiento de acción inmediata es una excep-ción que permite a las agencias desviarse del cauce ordinario que garantiza el derecho al debido proceso de ley, las circuns-tancias que invoque la agencia deben evaluarse cuidadosa-mente, tomando en cuenta que la situación debe ser una ex-traordinaria y realmente excepcional, que implique la existencia de un peligro inminente para la salud, la seguridad y el bienestar públicos. San Gerónimo Caribe Project v. A.R.Pe., supra, pág. 665.
Por último, expresamos que “para que la actuación sumaria esté justificada debe estar en juego un interés apre-miante del Estado que pudiera ser afectado por una situa-ción extraordinaria que no pueda protegerse mediante los mecanismos ordinarios del andamiaje gubernamental. En tales casos, el derecho a ser oído ceder”. San Gerónimo Caribe Project v. A.R.Pe., supra, pág. 666.
Expuesto lo anterior, resulta pertinente, a modo ilustra-tivo, reseñar las disposiciones del Administrative Procedure Act, 5 U.S.C.A. sec. 500 et seq., (A.P.A.), legislación análoga a nuestra L.P.A.U., que permite la vigencia inme-diata de las reglas y los reglamentos que aprueban las agencias administrativas federales. Esto, pues nuestra L.P.A.U. se inspiró y recoge muchas de las doctrinas de la A.P.A. Fund. Surfrider y otros v. A.R.Pe., 178 D.P.R. 563 (2010).
*86 IV
La A.P.A. es el estatuto federal que regula, entre otras cosas, lo relativo a la aprobación y publicación que las agencias federales hacen de reglas y reglamentos. En lo pertinente, la A.P.A., 5 U.S.C.A. see. 553, prescribe la forma en que las agencias deben llevar a cabo los procedi-mientos previos a la aprobación de reglas y reglamentos. Por lo cual, regula lo relativo a la notificación de la pro-puesta de reglamentación, participación ciudadana y fecha de su entrada en vigor, entre otros asuntos.
La A.P.A., 5 U.S.C.A. sec. 553(b), exige que las agencias notifiquen que se proponen adoptar cierta reglamentación mediante la publicación de un aviso. A menos que una ley lo exija, no se deberá notificar la propuesta de adoptar una regla o un reglamento ni se celebrarán vistas cuando se trate de: (1) reglas interpretativas, declaraciones generales de política pública, reglas de organización, procedimiento o práctica interna de la agencia, o (2) cuando la agencia de-termina por justa causa (Good Cause) —la cual deberá in-corporar junto a una breve declaración de las razones para ello en el reglamento así promulgado— que la notificación y el procedimiento público es impráctico, innecesario o con-trario al interés público. 5 U.S.C.A. sec. 553(b)(A) y (B).
El concepto justa causa, que exime del requisito de no-tificación y participación ciudadana, por ser ello imprác-tico, innecesario o contrario al orden público contemplado en la A.P.A., se interpreta de forma restrictiva. Kollet v. Harris, 619 F.2d 134 (1er Cir. 1980). Ello, pues el propósito de la notificación y de la participación ciudadana es brin-darle al público la oportunidad de influir sobre la agencia durante la etapa de formulación de reglas y reglamentos. Se exige, pues, que las agencias justifiquen mediante de-terminaciones de hecho y de derecho su incumplimiento con los requisitos de notificación y participación ciudadana. 3 Stein, Mitchel y Mezines, Administrative Law *87 Sec. 15.05 [6][b] (2009). Un Reporte del Senado sobre esta cláusula de justa causa expresó:
“[it] is not an ‘escape clause’which may be arbitrarily exercised but requires legitimate grounds supported in law and fact by the required finding”. (Enfasis suplido.) Stein, supra, citando el Reporte del Senado Núm. 79-752, 79no Congreso, Ira Se-sión (1946).
De lo anterior se deduce que si una agencia determina que existe justa causa para obviar los requisitos de notifi-cación y participación ciudadana, podrá hacerlo siempre y cuando lo justifique e incorpore las razones en la regla o en el reglamento que se apruebe. Se deduce, además, que si la agencia determina que también existe justa causa para que la regla o el reglamento entre en vigor inmediata-mente o en algún momento antes de los treinta días luego de su publicación, deberá incorporar las razones para ello en el texto que se publique.
V
Como el presente caso se ha traído como una acción de nulidad, según el procedimiento dispuesto en la See. 2.7 de la L.P.A.U., supra, debemos delimitar el término de treinta días allí dispuesto cuando se trata de un reglamento de emergencia aprobado de acuerdo con la Sec. 2.13 del mismo estatuto. De un examen cuidadoso de la L.P.A.U., encontramos que la aplicabilidad de la acción de nulidad sobre reglamentos de emergencia es incierta. Incluso, un análisis exhaustivo del historial legislativo de la L.P.A.U. reafirma un vacío normativo al respecto. Surge mayor in-certidumbre ante el hecho de que la acción reconocida por esta sección de la ley ni existe ni podría existir según la A.P.A. federal. Véase W. Vázquez Irizarry, Derecho Administrativo, 79 (Núm. 2) Rev. Jur. U.P.R. 647, 656-658 (2010).
Ello ocurre porque, como hemos señalado, la acción para *88 impugnar la validez de su faz de una regla o de un regla-mento por incumplir con las disposiciones de la L.P.A.U., se debe iniciar dentro de los treinta días siguientes a la fecha de vigencia de dicha regla o reglamento. Tomada en contexto, esa sección de la ley tiene como objetivo que una agencia se circunscriba a todos los requisitos de la L.P.A.U. —incluidos los de la Sec. 2.13, supra— o, de lo contrario, enfrente una acción de nulidad.
En casos como el presente, cuando un reglamento ha sido aprobado mediante el procedimiento de emergencia y la agencia que reglamenta está obligada a realizar el pro-cedimiento ordinario de publicación, comentarios y vistas públicas, con posterioridad a la puesta en vigencia del re-glamento, no tendría sentido que la parte afectada tenga que esperar a que se complete ese proceso para impugnar la validez del reglamento. Ello pondría a la parte que im-pugna la validez del reglamento en la desventajosa situa-ción de tener que cumplir con él y, a la vez, participar del procedimiento ordinario para exigirle a la agencia que cumpla con la ley. Por ende, debemos concluir que, en casos como el de autos, el término para llevar una acción de im-pugnación está suspendido. De esta forma, se salvaguarda la potestad que le reconoce el legislador a quien entiende que no se ha cumplido con los requisitos para un regla-mento adoptado según la Sec. 2.13 de la L.P.A.U., supra, ya sea porque no se incluyó la certificación del Gobernador, porque existen deficiencias en la certificación o porque no se presentó en el Departamento de Estado.
Resolver lo contrario sobre este aspecto sería forzar a quien inste la referida acción a presentarla inmediata-mente después de la presentación del reglamento ante el Departamento de Estado, cuando todavía no se le ha dado publicidad al reglamento, como ocurrió en el caso de autos. Como ha expresado el profesor Fernández Quiñones, la ac-ción de nulidad busca corregir los errores que cometió la *89 agencia durante el trámite procesal de su aprobación. Véase D. Fernández Quiñones, La revisión judicial de las decisiones administrativas, 69 (Núm. 4) Rev. Jur. U.RR. 1129, 1135 (2000). Sobre este mismo aspecto, Fernández Quiñones nos explica que la See. 2.7 de la L.RA.U. tiene como objetivo que se hagan cumplir los “requisitos cuyo cumplimiento es ineludible”. Fernández Quiñones, Derecho Administrativo Uniforme, op. cit., págs. 120-121. Entre esos requisitos están “los requisitos de notificación de la regla propuesta, concesión de oportunidad a la ciudadanía de presentar sus escritos y publicación de la regla adoptada”. Id., pág. 121.
Por ende, para salvaguardar el debido proceso precep-tuado en la L.P.A.U., la acción de nulidad tiene que estar disponible hasta treinta días después de que se complete el procedimiento ordinario. De otra manera, la See. 2.7 que garantiza el cumplimiento con todas las disposiciones de la L.P.A.U., no estaría disponible para conformar el procedi-miento ordinario a lo dispuesto en dicha ley. Así, conclui-mos que en el presente caso la acción de nulidad se pre-sentó oportunamente.
Habiendo considerado los asuntos concernientes al tér-mino jurisdiccional para la impugnación del procedimiento que siguió la agencia, procedemos a considerar sus fundamentos. Como cuestión de umbral debemos determi-nar si se utilizó correctamente el procedimiento de aproba-ción de reglamentos de vigencia inmediata de la Sec. 2.13 de la L.RA.U., supra.
De una simple lectura de la L.RA.U. surge que el pro-cedimiento de aprobación de reglamentos dispuesto en la sección en cuestión es excepcional. Ello, pues permite la aprobación de normas legislativas sin notificar a la ciuda-danía y sin brindarle la oportunidad de expresarse antes de que éstas entren en vigor. Lo anterior es contrario al procedimiento ordinario de notificación y participación ciudadana.
*90 Según la jurisprudencia reseñada, en la que analizamos el concepto emergencia en distintos contextos, la interpre-tación que se le ha dado ha variado a lo largo del tiempo. Así, en Meléndez Ortiz v. Valdejully, supra, concebimos el concepto emergencia como una situación que exige acción inmediata. Luego de analizar cuidadosamente dicha jurisprudencia, nos reiteramos, al igual que lo hicimos en Acevedo Vilá v. C.E.E., supra, en que, según discutiésemos en Meléndez Ortiz v. Valdejully, supra, en el ámbito adminis-trativo, el concepto emergencia no necesariamente se li-mita a una circunstancia imprevista, sino que comprende un suceso o combinación y acumulación de circunstancias que exigen actuación inmediata. Ello refleja no sólo el en-tendimiento general que hemos tenido de dicho término, sino que es también cónsono con la flexibilidad que se pretende otorgar a las agencias para actuar ante situaciones que exigen su intervención inmediata.
Contrario a lo que alega el Estado, entendemos que en este caso el Departamento de Salud no cumplió con el es-tándar requerido para aprobar un reglamento de emergencia. No dudamos que el Departamento haya deter-minado que se exigía su acción inmediata. Es innegable, sin embargo, que la referida Certificación es en extremo sucinta y carece de una explicación de las razones especí-ficas para el uso del mecanismo de emergencia para apro-bar el Reglamento 117-A. Al actuar de esa forma, el Estado no explicó las razones para utilizar el trámite de emergen-cia, suprimió innecesariamente la notificación a las partes afectadas por la nueva reglamentación, según las exigen-cias del procedimiento ordinario de aprobación de regla-mentos, impidió la participación ciudadana y la posibilidad de hacer enmiendas a la reglamentación considerando dicho insumo y, más importante aún, dejó fuera del expe-diente razones suficientes para poner a la Rama Judicial en posición de evaluar efectivamente su actuación, como *91 evidentemente pudimos hacer en los casos sobre distintos tipos de emergencia que discutiéramos anteriormente.
HIMA sostiene que el hecho de que ni la agencia ni la Certificación del Gobernador consignan en tantas palabras las razones específicas por las cuales se empleó el método de aprobación de reglamentos de emergencia, torna el Re-glamento 117-A en nulo ab initio. Tiene razón. A pesar de que la Sec. 2.13 de la L.P.A.U., supra, provee un meca-nismo excepcional que se desvía del procedimiento ordina-rio de aprobación de reglas y reglamentos, este se debe interpretar de forma restrictiva. Por ello, resolvemos que cuando una agencia solicite al Primer Ejecutivo que sus-criba la Certificación requerida por dicha sección, debe consignar en el expediente del Reglamento las razones que justifican el uso del mecanismo extraordinario, de forma tal que, tanto el público afectado por el reglamento, como los tribunales, estén en mejor posición de entender y revi-sar las razones que tuvo el Estado para actuar de forma inmediata.
Nuestra experiencia, en el ejercicio de la función judicial revisora ha sido que el uso y la costumbre de los goberna-dores es acoger en sus certificaciones las razones que expo-nen las agencias que justifican la preterición del trámite administrativo ordinario. De esta forma, se logra el obje-tivo de la mayor transparencia en dicho proceso. La pru-dencia aconseja que el Poder Ejecutivo continúe con esta práctica. Todo esto impedirá, a su vez, que esta excepción se convierta en “patente de corso” y así sirva de subterfugio para soslayar el mecanismo ordinario, pues no deseamos que la excepción suplante la norma.
Por todo lo anterior, declaramos nulo ab initio el Regla-mento adoptado por el Departamento de Salud. Resuelto lo anterior, no es necesario atender lo relativo al requisito de publicación del Departamento de Estado de un aviso pú-blico respecto a la vigencia del reglamento.
*92 Por los fundamentos antes expuestos, se revoca la Sentencia del Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

 El caso de autos representa la tercera vez que el Centro Médico del Turabo, Inc. h/n/c Grupo HIMA San Pablo (HIMA) comparece ante nos para tratar de impedir que nuestras agencias de salud pública le prohíban incluir cláusulas legales de selección de foro en los documentos que se presentan a los pacientes como parte del proceso de consentimiento informado. No obstante, esa práctica ha sido válidamente prohibida en nuestro ordenamiento. Véase Reglamento Núm. 7617 de 21 de noviem-bre de 2008 de la Oficina de la Procuradora del Paciente de Puerto Rico. Véase, además, Centro Médico del Turabo, Inc., D/B/A Grupo HIMA San Pablo v. Oficina de la Procuradora del Paciente, KLRA0800659, resuelto el 8 de septiembre de 2008. Denegamos expedir el Certiorari en dicho recurso el 17 de abril de 2009, CC-2008-965; Centro Médico del Turabo, Inc. D/B/A Grupo HIMA San Pablo, KLRA200900191, resuelto el 26 de agosto de 2009. Denegamos expedir el Certiorari en ese recurso, CC-2009-827, el 13 de abril de 2010.